UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CANDICE HEYAIME,

Plaintiff,

vs.

SPIRIT AIRLINES, INC.
A Foreign Profit Company,

Defendants.

_____/

## PLAINTIFF'S COMPLAINT

Plaintiff, CANDICE HEYAIME, (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby files this Civil Action against Defendant, SPIRIT AIRLINES, INC, (hereinafter "Defendant"). Plaintiff states the following in support:

1.  Named Plaintiff, CANDICE HEYAIME ("Plaintiff"), by and through the undersigned counsel, individually and on behalf of all others similarly situated, hereby files this Class Action Complaint alleging Defendant SPIRIT AIRLINES, INC. ("Spirit" or "Defendant") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide Plaintiff and the putative class members with a COBRA notice that complies with the law.

2.  This is an action for declaratory and injunctive relief, and damages pursuant to The Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq*, ("FMLA"), and the Florida Civil Rights Act of 1992 ("FCRA") to redress injuries resulting from Defendant's unlawful race-based and national-origin based discriminatory treatment of and retaliation against Plaintiff.

3.      At all times material hereto, Plaintiff was, and still is, a resident of Broward County, Florida.

4.      Defendant is a foreign profit corporation with its primary place of business and headquarters in Miramar, Florida.

5.      The actions in Controversy all occurred within Broward County, Florida.

6.      Venue is proper in Broward County, Florida, pursuant to Fla. Stat. Section 47.011, because all of the actions complained of herein occurred within the jurisdiction of the Seventeenth Judicial Circuit, in and for Broward County, Florida. Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2).

7.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

8.      Plaintiff experienced a qualifying event within the meaning of 29 U.S.C. § 1163(2).

9.       Defendant is a Plan Administrator within the meaning of 29 U.S.C. § 1002(16)(A).

10.     Regarding Plaintiff's discrimination claims, Plaintiff has exhausted its administrative remedies by filing a timely charge with the appropriate agency.

11.     Plaintiff timely filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC), the agency which is responsible for investigating claims of employment discrimination.

12.     Pursuant to Florida Statute Section 760.11 (1), for all charges of discrimination filed after June 8, 2001, the filing of a discrimination charge with the Equal Employment Opportunity Commission or with a local fair employment practices agency, vest the Florida Commission On Human Relations with jurisdiction with respect to that charge.

13.     All conditions precedent for the filing of this action before this Court have indeed been previously met, including the exhaustion of all pertinent administrative procedures and remedies.

## **CLASS ACTION ALLEGATIONS**

14.     The foregoing facts are incorporated herein.

15.     Plaintiff brings this action as a class action pursuant to the Federal Rules of Civil Procedure on behalf of the following persons: All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant, in the form sent to Plaintiff, during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage.

16.     No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class. Even if they did, any efforts related to exhausting such non-existent remedies would be futile.

17.     Numerosity: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

18.     Typicality: Plaintiff's claims are typical of the Class. The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received was typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

19.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class members, Plaintiff has no interests antagonistic to the class, and has retained counsel experienced in complex class action litigation.

20.     Commonality: Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class, including but

not limited to: a. Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1); b. Whether Defendant's COBRA notice complied with the requirements of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4; c. Whether statutory penalties should be imposed against Defendant under 29 U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount; d. The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and e. Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

131. Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice.

21.    Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

22.    Plaintiff intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure. The names and addresses of the Class Members are available from Defendant's records, as well as from Defendant's third-party administrator.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23.    Plaintiff is a Hispanic individual and is forty-three years old and is within the class of individuals protected by the FCRA and FMLA.

24. Plaintiff worked for Defendant as a Recruiter whose compensation was on a salaried basis.

25. Plaintiff worked for the Defendant from January 27, 2014, to on or about August 24, 2018.

26.     Plaintiff was one of the only two Hispanic workers within her department under Defendant, and was one of the two Hispanic's fired from said department in relation to the controversy at bar.

27.     Plaintiff arranged for paid time off ("PTO") starting on or about August 17, 2018.

28.     Plaintiff was unable to work for a period of time as a result of medical troubles from August 20, 2018 to on or about August 24, 2020

29.     Plaintiff reached out to Ms. Villa, Defendant's CHRO and Senior VP of HR, to inform Ms. Villa of her medical issues and Plaintiff's need to take time off.

30.     Ms. Villa's only response was that she wished the Plaintiff "feel better."

31.     On or about August 22, 2018, Plaintiff had a consult with her physician.

32.     On or about August 23, 2018, Plaintiff filed for FMLA with her employer.

33.     Plaintiff was terminated from employment by Defendant on or about August 24, 2018, in retaliation of Plaintiff's race as one of the only two Hispanics within her division (both of which had their employment terminated), age, national origin, and as a result of Plaintiff's medical leave due to her disability.

34.     Plaintiff filed an EEOC charge, (510-2019-01070), against Defendant pursuant to Title VII violations, ADEA violations. Plaintiff subsequently received rights-to-sue from the EEOC on July 6, 2020.

35.     Any reason proffered by Defendant for the conduct described above is mere pretext for unlawful discrimination and retaliation. Throughout her employment Plaintiff was able to perform the essential functions of her job duties and responsibilities, and at all relevant times did perform her job at satisfactory or above-satisfactory levels.

36.     The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by

the statute. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.

37.    Notice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

38.    Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

39.    COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor. 29 U.S.C. § 1166(a).

40.    To facilitate compliance with notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

41.    In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems

proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1). Such is the case here. Defendant failed to use the Model Notice and failed to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below. Defendant's Notice Is Inadequate and Fails to Comply with COBRA.

42.     Defendant partially adhered to the Model Notice provided by the Secretary of Labor, but only to the extent that served Defendant's best interests, as critical parts are omitted or altered in violation of 29 C.F.R. § 2590.606-4. Among other things: a. Defendant's "Cobra Enrollment Notice" violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to provide the address to which payments should be sent; b. Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes); c. Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4)(vi) because fail to provide all required explanatory information; and d. Defendant's COBRA forms violate 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.

43.     Defendant's COBRA notice confused Plaintiff and resulted in Plaintiff's inability to make an informed decision as to electing COBRA continuation coverage. In fact, Plaintiff did not understand the notice and, further, Plaintiff was unable to elect COBRA because of the confusing and incomplete COBRA notice. For example, the Defendant's COBRA notice omission of a payment address left Plaintiff without information on where to mail payment if elected. Similarly, the Cobra Enrollment Notice failed to sufficiently explain how to enroll in COBRA.

44.     Plaintiff could not make an informed decision about Plaintiff's health insurance and lost health coverage.

## NAMED PLAINTIFF CANDICE HEYAIME

45.     Named Plaintiff Candice Heyaime worked for Defendant from January 27, 2014, to on or about August 24, 2018.

46.     As a result of Plaintiff's termination, Plaintiff experienced a qualifying event as defined by 29 U.S.C. § 1163(2).

47.     Following this qualifying event, Defendant caused its COBRA Administrator to mail Plaintiff a deficient COBRA enrollment notice form.

48.     The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth herein.

49.     Defendant has in place no administrative remedies Plaintiff was required to exhaust prior to bringing suit.

50.     Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

51.     Plaintiff suffered a tangible injury in the form of lost health insurance coverage because of Defendant's deficient COBRA notice.

52.     Plaintiff suffered a concrete injury when Plaintiff refrained from seeing a physician because Plaintiff lost the health insurance.

53.     Additionally, Plaintiff suffered a tangible injury in the form of economic harm when Plaintiff had to pay full price for medical expenses, including medication.

54.     Not only that, Plaintiff suffered injury in the form of stress and anxiety created by the loss of Plaintiff's health insurance coverage because of Defendant's deficient COBRA notice.

55.    Plaintiff also suffered a tangible injury in the form of lost prescription benefits because of Defendant's deficient COBRA notice.

56.    Plaintiff suffered further tangible injury in the form of lost medical treatment.

57.    Finally, when Plaintiff did obtain alternative coverage it was much worse.

58.    Finally, Plaintiff suffered an informational injury as a result of Defendant's deficient COBRA notice because Plaintiff was never provided all information to which Plaintiff was entitled by 29 C.F.R. § 2590.606-4(b).

59.    No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class as Plaintiff is not making a claim for benefits or payment for benefits under any health plan.

60.    Nor does Plaintiff challenge the termination of Plaintiff's health benefits after Plaintiff experienced a qualifying event.

61.    Rather, Plaintiff is simply challenging the legal sufficiency of Defendant's post-employment COBRA notices. As such, any efforts related to exhausting under such non-existent remedies are/were futile.

**CLASS CLAIM I FOR RELIEF:**
**Violation of 29 U.S.C. § 1166(a) and 29 C.F.R.§2590.606-4**

62.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

63.    Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

64.    On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice in the forms that did not comply with the law.

65.     The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons). 137. These violations were material and willful.

66.     Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

a. Designating Plaintiff's counsel as counsel for the Class;

b. Issuing proper notice to the Class at Defendant's expense;

c. Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d. Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e. Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f. Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g. Granting such other and further relief, in law or equity, as this Court deems appropriate.

<u>**COUNT II:**</u>
<u>**VIOLATION OF 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 (by Candice Heyaime)**</u>

67.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

68.     The Defendant offered Plaintiff and other similarly situated personnel a group health plan.  The group health plan is a group health plan within the meaning of 29 U.S. C. § 1167(1).

69.     Defendant is the plan sponsor and plan administrator of the group health plan and was subjected to the continuation of coverage and notice requirements of COBRA.

70.     Despite having access to the Department of Labor's Model COBRA form, Defendant chose not to use the model form— presumably to save money by pushing terminated employees away from electing COBRA. In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend.

71.      Put another way, instead of utilizing the DOL Model Notice and sending a single COBRA notice "written in a manner calculated to be understood by the average plan participant" containing all required by law, to save money Defendant instead opted to break the information into multiple documents, mailed separately under different cover, containing bits and pieces of information on COBRA, both of which are still missing critical information. In fact, the DOL Model Notice was designed to avoid precisely the issues caused by Defendant's confusing and piecemeal COBRA rights notification process.

72.     Defendant failed to send Plaintiff and other Class Members a timely OBRA notice which violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4.

73.     These violations were material and willful.

74.     Defendant knew that it should have sent timely and/or non-deficient notice consistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

75.     The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiff. It also caused Plaintiff economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.

76.     Defendant has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

77.     Defendant's COBRA notice and process violates the law. Rather than including all information required by law in a single notice, written in a manner calculated to be understood by the average plan participant, Defendant's COBRA notification process instead offers only part of the legally required information in haphazard and piece-meal fashion. hat this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." Health Insurance Continuation Coverage Under COBRA, Congressional Research Service, Janet Kinzer, July 11, 2013.

78.     For example, Defendant's COBRA Enrollment Notice sent to Plaintiff following Plaintiff's termination, violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include an address indicating where COBRA payments should be mailed.

79.     Not only that, it violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the COBRA Enrollment Notice itself never actually explains how to enroll in COBRA, nor does it bother including a

physical election form (both of which the model Department of Labor form includes). Instead, it merely directs plan participants to a "catch-all" general H.R. phone number to enroll in COBRA, operated by a third-party guised as Defendant benefits department, rather than explaining how to actually enroll in COBRA. The COBRA Enrollment Notice contains no instructions on how to actually enroll if one calls the phone number. Thus, it defies logic for the same document -- which purports to be a "COBRA Enrollment Notice" -- not to also contain instructions on how to enroll in COBRA.

80.     The COBRA Enrollment Notice also violates 29 C.F.R. § 2590.606– 4(b)(4)(xii) because it fails to include information on how COBRA coverage can be lost prematurely, including, for example, because of late payments. Furthermore, The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.

81.     Because The Cobra Enrollment Notice omits the above critical pieces of information, it collectively violates 29 C.F.R. § 2590.606–4(b)(4), which not only that, during part of the "election period" even the online option ceased to exist. Requires the plan administrator of a group-health plan to provide a COBRA notice "written in a manner calculated to be understood by the average plan participant." Without information on how to elect COBRA, or where to send payments, Defendant's COBRA enrollment notice simply is not written in a manner calculated to be understood by the average plan participant.

82.     As a result of receiving the deficient COBRA enrollment notice, Plaintiff failed to understand the notice and, thus, Plaintiff could not make an informed decision about Plaintiff's health insurance and lost health coverage.

83.     Plaintiff suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage and incurred medical bills, due Defendant's deficient COBRA form(s). In

addition to a paycheck, health insurance is one of the most valuable things employees get in exchange for working for an employer like Defendant. Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

84.    Not only did Plaintiff lose Plaintiff's insurance coverage, after Plaintiff lost the insurance Plaintiff incurred medical bills resulting in further concrete economic injury.

85.    Plaintiff suffered further concrete injury Plaintiff suffered an additional concrete harm in the form of significant wasted time (hours) trying to figure out how to self-treat at least one medical condition since Plaintiff no longer had health insurance.

86.    Defendant's above violations also subjected Plaintiff to a risk of real harm to the concrete interest in receiving a notice written in a manner calculated to be understood by the average plan participant, and to elect COBRA continuation coverage, the very interests that Congress sought to protect with ERISA/COBRA

87.    Finally, Defendant's deficient COBRA notice also caused Plaintiff an informational injury when Defendant failed to provide Plaintiff with information to which Plaintiff was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Through Defendant and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members Plaintiff seeks to represent by failing to provide all information in its notice required by COBRA.

88.    As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiff seeks statutory penalties, injunctive relief, attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

89.    The governing statute clearly requires that "[t]he notice … shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:…(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made." 29 C.F.R. § 2590.606-4(b)(4)(v).

90.    As a threshold matter, Defendant's COBRA Enrollment Notice fails to adequately explain the procedures for electing coverage. By failing to include explanation of the procedures for electing coverage, Defendant interfered with Plaintiff's ability to elect COBRA continuation coverage. And, furthermore, by failing to adequately explain the procedures for electing coverage, Defendant prevented Plaintiff from understanding its rights under COBRA and how to make an informed decision about continuation coverage.

91.    Instead, Defendant's COBRA enrollment notice merely directs plan participants to a general phone number, rather than explaining how to actually enroll in COBRA. To further compound the confusion, the Defendant's COBRA enrollment notice contains no instructions on how to actually enroll if one calls the phone number. The telephone number provided by Defendant in its COBRA enrollment notice is a "catch-all" number individuals can call with questions about anything benefit-related, including retirement funds, etc.

92.    This "catch-all" number is actually a phone number to a third-party administrator (an entity never identified in the COBRA notice).

93.    A "catch-all" number provided by Defendant and then routed to a third-party call center designed to answer anything HR-related simply cannot meet the strict informational statutory requirements of 29 C.F.R. § 2590.606- 4(b)(4)(v) required of all COBRA notices as to enrollment.

94.     Unlike the Defendant's COBRA notice, the Model DOL notice provides a near fool-proof way to elect COBRA coverage by providing a physical election form to mail in, the date it is due, the name and address to where election forms should be sent, spaces for the names, social security numbers, and type of coverage elected by each plan participant or beneficiary.

95.     Defendant's COBRA enrollment notice simply does not contain "an explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made" as required by 29 C.F.R. § 2590.606- 4(b)(4)(v). Merely telling Plaintiff and the putative class members to call a generic 1-800 number operated by a third-party and hope they are able to figure out how to enroll after they call is not what is legally required in a COBRA notice. Instead, the notice itself must contain information on how to enroll. Defendant's simply does not.

**COUNT III:**
**Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii) Failure to provide the address to which payments should be sent (by Candice Heyaime)**

96.     Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

97.     Defendant is specifically required to include in its notice the address to which payments should be sent. 29 C.F.R. § 2590.606-4(b)(4)(xii). The Cobra Enrollment Notice simply does not include this information.

98.     The COBRA enrollment notice provided to Plaintiff fails to actually state where payments are to be sent. This is a per se violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which on its face requires all COBRA notices include "the address to which payments should be sent."

99.     But Defendant's piecemeal strategy for COBRA information does not comport with the law. Rather, as demonstrated by the Model DOL COBRA notice, which is a single cohesive

document, 29 C.F.R. § 2590.606- 4(b)(4)(xii) contemplates providing the statutorily required information in "a" COBRA "notice" (singular), rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

100.    Without this information, Plaintiff is left ready and willing, but unable, to properly enroll and maintain continuation coverage.

101.    A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision. Without knowing where to send payment, Plaintiff was misled as to how to enroll in COBRA.

102.    Because of the foregoing deficiencies, Defendant's COBRA notice is insufficient. Defendant has misled Plaintiff about the material parameters and procedures surrounding Plaintiff's right to elect COBRA coverage, failing to comply with the requirements made clear by the Code of Federal Regulations.

<u>**COUNT IV:**</u>
<u>**Violation of 29 C.F.R. § 2590.606-4(b)(4)(vi) – Failure to Include Explanatory Information**</u>
<u>**(by Candice Heyaime)**</u>

103.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

104.    The Cobra Enrollment Notice violates 29 C.F.R. § 2590.606- 4(b)(4)(vi) because it fails to provide all required explanatory information.

105.    For example, there is simply no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act.

**COUNT V:**
**Violation of 29 C.F.R. § 2590.606-4(b)(4) Failure to Provide COBRA Notice Written in a**
**Manner Calculated "To Be Understood By the Average Plan Participant" (by Candice**
**Heyaime)**

106.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

107.    By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission from The Cobra Enrollment Notice of how to actually enroll in COBRA, where to send payment, the consequences for untimely payments, failure to include all required explanatory information, and even who the COBRA Administrator is/was, Defendant cumulatively violated 29 C.F.R. § 2590.606- 4(b)(4). This particular section mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant." Without the aforementioned critical pieces, Defendant's COBRA notice cannot be said to be written in a manner calculated "to be understood by the average plan participant." Thus, Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(v).

**COUNT VI**
**Race Discrimination in Violation of the FCRA(by Candice Heyaime)**

108.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

109.    Plaintiff is a member of a protected class under the FCRA.

110.    By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's race and subjected the Plaintiff to race-based animosity.

111.    Such discrimination was based upon the Plaintiff's race in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is not black or Haitian.

112.    Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's national origin was unlawful but acted in reckless disregard of the law.

113.    At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

114.    Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

115.    As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

116.    The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and/or federal law.

117.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights.

118.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

    a.    Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff' rights;

    b.    Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits

adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful

employment practices described herein;

c.   Enter an award against Defendant and award Plaintiff compensatory damages for

mental anguish, personal suffering, and loss of enjoyment of life;

d.   Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the

full benefits Plaintiff would have had Plaintiff not been discriminated against by

Defendant, or in lieu of reinstatement, award front pay;

e.   Award Plaintiff the costs of this action, together with a reasonable attorney fees; and

f.   Grant such additional relief as the Court deems just and proper.

<u>**COUNT VII**</u>
<u>**Age discrimination in violation of the FCRA (by Candice Heyaime)**</u>

119.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as

if set out in full herein.

120.   Plaintiff is a member of a protected class under the FCRA.

121.   By the conduct describe above, Defendant has engaged in discrimination against Plaintiff

because of Plaintiff's age and subjected the Plaintiff to age-based animosity.

122.   Such discrimination was based upon the Plaintiff's race in that Plaintiff would not have

been the object of discrimination but for the fact that Plaintiff is of an older age.

123.   Defendant's conduct complained of herein was willful and in disregard of Plaintiff's

protected rights.  Defendant and its supervisory personnel were aware that discrimination on the

basis of Plaintiff's age was unlawful but acted in reckless disregard of the law.

124.   At all times material hereto, the employees exhibiting discriminatory conduct towards

Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's

employment with the Defendant.

125.     Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

126.     As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

127.     The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and/or federal law.

128.     The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights.

129.     Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

g.     Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff' rights;

h.     Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

i.     Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

j.     Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by

Defendant, or in lieu of reinstatement, award front pay;

k.   Award Plaintiff the costs of this action, together with a reasonable attorney fees; and

l.   Grant such additional relief as the Court deems just and proper.

## COUNT VIII
## National Origin Discrimination in Violation of the FCRA (by Candice Heyaime)

130.   Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein

131.   Plaintiff is a member of a protected class under the FCRA.

132.   By the conduct describe above, Defendant has engaged in discrimination against Plaintiff because of Plaintiff's national origin and subjected the Plaintiff to national origin-based animosity.

133.   Such discrimination was based upon the Plaintiff's race in that Plaintiff would not have been the object of discrimination but for the fact that Plaintiff is not black or Haitian.

134.   Defendant's conduct complained of herein was willful and in disregard of Plaintiff's protected rights.  Defendant and its supervisory personnel were aware that discrimination on the basis of Plaintiff's national origin was unlawful but acted in reckless disregard of the law.

135.   At all times material hereto, the employees exhibiting discriminatory conduct towards Plaintiff possessed the authority to affect the terms, conditions, and privileges of Plaintiff's employment with the Defendant.

136.   Defendant retained all employees who exhibited discriminatory conduct toward the Plaintiff and did so despite the knowledge of said employees engaging in discriminatory actions.

137.   As a result of Defendant's actions, as alleged herein, Plaintiff has been deprived of rights, has been exposed to ridicule and embarrassment, and has suffered emotional distress and damage.

138.   The conduct of Defendant, by and through the conduct of its agents, employees, and/or representatives, and the Defendant's failure to make prompt remedial action to prevent continued

discrimination against the Plaintiff, deprived the Plaintiff of statutory rights under state and/or federal law.

139.    The actions of the Defendant and/or its agents were willful, wanton, and intentional, and with malice or reckless indifference to the Plaintiff's statutorily protected rights.

140.    Plaintiff has suffered and will continue to suffer both irreparable injury and compensable damages as a result of Defendant's discriminatory practices unless and until this Honorable Court grants relief.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

a.  Adjudge and decree that Defendant has violated the FCRA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff' rights;

b.  Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

c.  Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

d.  Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

e.  Award Plaintiff the costs of this action, together with a reasonable attorney fees; and

f.  Grant such additional relief as the Court deems just and proper.

## COUNT IX
### Interference with FMLA Rights in Violation of the FMLA (by Candice Heyaime)

141.    Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

142.   Plaintiff had a right under the FMLA to take the leave Plaintiff requested. Plaintiff was entitled to and eligible for leave under the law.  Defendant interfered with the Plaintiff's exercise of the FMLA rights she is entitled to under the pertinent statutes.

143.   By requesting and taking the leave Plaintiff engaged in a statutorily protected activity.

144.   Plaintiff's termination constitutes an adverse employment action under the law.

145.   Defendant's decision to terminate the Plaintiff, as previously described, was causally related to Plaintiff's statutorily protected activity.

**WHEREFORE**, Plaintiff respectfully prays for the following relief against Defendant:

   a.   Adjudge and decree that Defendant has violated the FMLA, and has done so willfully, intentionally, and with reckless disregard for Plaintiff's rights;

   b.   Enter a judgment requiring that Defendant pay Plaintiff appropriate back pay, benefits' adjustment, and prejudgment interest at amounts to be proved at trial for the unlawful employment practices described herein;

   c.   Enter an award against Defendant and award Plaintiff compensatory damages for mental anguish, personal suffering, and loss of enjoyment of life;

   d.   Require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had Plaintiff not been discriminated against by Defendant, or in lieu of reinstatement, award front pay;

   e.   Award Plaintiff the costs of this action, together with a reasonable attorney fees; and

   f.   Grant Plaintiff such additional relief as the Court deems just and proper under the circumstances.

## COUNT X
## Retaliation in Violation of the FMLA (by Candice Heyaime)

146. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1-61 above as if set out in full herein.

147. Plaintiff had a right under the FMLA to take the leave Plaintiff requested. Plaintiff was entitled to and eligible for leave under the law.

148. By requesting and taking the leave Plaintiff engaged in a statutorily protected activity.

149. Plaintiff's termination constitutes an adverse employment action under the law.

150. Defendant's decision to terminate the Plaintiff, as previously described, was causally related to Plaintiff's statutorily protected activity.

## <u>JURY DEMAND</u>

Plaintiff demands trial by jury of all issues triable as of right by jury.

Dated: August 23 2021     Respectfully submitted,

*Anthony M. Georges-Pierre*
**Anthony M. Georges-Pierre, Esq.**
Florida Bar No.: 533637
agp@rgpattorneys.com
**Max L. Horowitz, Esq.**
Florida Bar No.: 118269
mhorowitz@rgpattorneys.com
**REMER & GEORGES-PIERRE, PLLC**
44 West Flagler Street, Suite 2200
Miami, FL 33130
Telephone: (305) 416-5000
Facsimile: (305) 416-5005

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

CANDICE HEYAIME,

      Plaintiff,

vs.

SPIRIT AIRLINES, INC,
A Foreign Profit Company,

      Defendants.

_____/

**SUMMONS IN A CIVIL CASE**

TO: Spirit Airlines, via its registered agent:

CORPORATION SERVICE COMPANY
1201 HAYS STREET
TALLAHASSEE, FL 32301-2525
**YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S
ATTORNEY**
Anthony M. Georges-Pierre, Esq.
REMER & GEORGES-PIERRE, PLLC COURTHOUSE TOWER
44 West Flagler Street, Suite 2200
Miami, FL 33130

An Answer to the Complaint, which is herewith served upon you, within 21 days after service of
this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default
will be taken against you for the relief demanded in the complaint. You must also file your
answer with the Clerk of this Court within a reasonable period of time after service.

_____          _____

CLERK                                          DATE

_____

(BY) DEPUTY CLERK